United States District Court
Southern District of Texas
**ENTERED**
November 29, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| ILDA STEEN, *et al.*, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-00072 |
| | § | |
| MAIDS IN THE USA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' First Amended Motion to Dismiss Pursuant to Rule 12(b)(6). Dkt. 11. Defendants Clyde and Kandra Moss (collectively, "Defendants") ask me to dismiss Plaintiffs' claims brought under the Fair Labor Standards Act ("FLSA"). After considering the briefing and the applicable law, I recommend the motion be **DENIED**.

## BACKGROUND

Plaintiffs Ilda Steen, Jacey Caldwell, Jaileigh Dozier, and Antonio Urias (collectively, "Plaintiffs") are former employees of Maids in the USA.[1] Based in Brazoria County, Texas, Maids in the USA is a janitorial business that provides cleaning services to residential and commercial buildings. Defendants own and operate Maids in the USA. Plaintiffs allege they worked as "Housekeepers/Maids" for Defendants. Dkt. 10 at 3. Defendants allegedly "controlled the details of Plaintiffs' employment duties, Plaintiffs' work assignments, work schedules and rates of pay." *Id.* at 3. Each Plaintiff purportedly worked for Maids in the USA

---

[1] In addition to Defendants, Plaintiffs also sued Maids in the USA. It is unclear whether Maids in the USA is an actual business entity, or merely Defendants' "assumed name." Dkt. 11-1 at 1. Regardless, Maids in the USA has not moved to dismiss. *See* Dkt. 11 at 1 ("COMES NOW, Clyde Moss and Kandra Moss, Defendants herein, and files this Motion to [D]ismiss . . . .").

"within the past 3 years from [May 22, 2023,] the date of the filing of [Plaintiffs' First Amended Complaint]" ("Amended Complaint").[2] *Id.*

Plaintiffs assert that they regularly worked "well in excess of forty (40) hours per week" and "generally averaged approximately forty-five (45) hours or more per week." *Id.* According to Plaintiffs, "Defendants continuously failed and/or refused to pay Plaintiffs the overtime wages [due to Plaintiffs] for the hours Plaintiffs worked in excess of forty (40)" hours per week. *Id.* Instead, Plaintiffs allege that they received their normal hourly rate for the hours they worked in excess of 40 hours per week.

Plaintiffs seek the amount of their unpaid overtime wages. Defendants argue that Plaintiffs have not pled sufficient facts to meet the elements of an FLSA claim.

## LEGAL STANDARD

If a plaintiff fails "to state a claim upon which relief can be granted," that claim must be dismissed. FED. R. CIV. P. 12(b)(6). To avoid dismissal at this early stage, the plaintiff need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The United States Supreme Court has interpreted these rules as requirements that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But a complaint based solely on legal conclusions or a "formulaic recitation of the elements of a cause of action" is not plausible. *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up). In other words, the alleged

---

[2] Attached to the Amended Complaint as Exhibit A is an undated document on Maids in the USA letterhead. *See* Dkt. 10-1. Signed by Clyde Moss, the document "acknowledge[s] that Ilda Longoria-Steen is an employee of Maids in the USA." *Id.* at 1. The document states that Steen began employment on February 2, 2014, and her weekly salary is $375.

facts "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007); *see also* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## ANALYSIS

The FLSA requires employers to pay overtime compensation (generally one and one-half time) for any hours worked by certain employees in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1). To sufficiently state an overtime claim under the FLSA, Plaintiffs must allege: "(1) that an employer-employee relationship existed during the time [they] worked in excess of forty hours per week; (2) that [they] engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime-wage requirements; and (4) the amount of overtime-pay due." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 309 (5th Cir. 2021). Because Defendants argue that Plaintiffs have not satisfied any of these elements, I will address each in turn.

### A.   EXISTENCE OF AN EMPLOYER-EMPLOYEE RELATIONSHIP

In the Amended Complaint, Plaintiffs allege they are "former employees of Defendants who performed employment duties . . . in Brazoria County, Texas" as "Housekeepers/Maids." Dkt. 10 at 1, 3. Plaintiffs further allege: "Defendants controlled the details of Plaintiffs' employment duties, Plaintiffs' work assignments, work schedules and rate of pay. The janitorial and commercial cleaning employment duties performed by Plaintiffs for Defendants are the core part of Defendants' regular business." *Id.* at 3. Plaintiffs also assert that Defendants "intentionally and falsely classif[ied] Plaintiffs as independent contractors" "to create a subterfuge regarding Plaintiffs' employment status." *Id.* at 5.

Defendants argue I should apply common law principles of agency to determine whether an employer-employee relationship existed. Under such a standard, they argue, "Plaintiffs have alleged no facts that would qualify the relationship as a master-servant/agency." Dkt. 11 at 4. That is not the relevant test.

"The common law concepts of 'employee' and 'independent contractor' have been specifically rejected as determinants of who is protected by the [FLSA]." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976). Instead, "[g]iven the remedial purposes of the legislation, an expansive definition of 'employee' has been adopted by the courts." *Id.* As such, Defendants' comparisons to federal statutes prohibiting workplace discrimination or setting minimum standards for retirement plans are inapposite.

The correct question I must ask is "whether the alleged employees, as a matter of economic reality, are economically dependent on the business to which they supply their labor and services." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (quotation omitted). In the Fifth Circuit, courts answer this question by applying the five non-exhaustive factors articulated by the Supreme Court in *United States v. Silk*, 331 U.S. 704, 716 (1947):

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Parrish*, 917 F.3d at 379 (quotation omitted). "No single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (quotation omitted).

When considering a Rule 12(b)(6) motion to dismiss, I am required to accept the Amended Complaint's well-pleaded factual allegations as true. *See LaVergne v. Stutes*, 82 F.4th 433, 435 (5th Cir. 2023). At this early stage in the litigation, the Amended Complaint undoubtedly provides a sufficient basis for me to conclude

that an employer-employee relationship exists. Plaintiffs plausibly alleged their own economic dependence on Defendants, Defendants' determination of profit or loss to Plaintiffs, and Defendants' control over Plaintiffs by dictating their schedules and assignments. Therefore, the first element—existence of an employer-employee relationship for FLSA purposes—is satisfied.

**B.    ENGAGEMENT IN ACTIVITIES COVERED BY THE FLSA**

Plaintiffs must next allege that they were "engaged in activities covered by the FLSA." *White*, 996 F.3d at 309. FLSA overtime protections apply to employees engaged "in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods or commerce." 29 U.S.C. § 207(a)(1). These two types of FLSA coverage are known as individual coverage and enterprise coverage, respectively. *See Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). "[I]t is not particularly difficult to sufficiently plead" either type of FLSA coverage. *Garza v. Armstrong*, No. 3:22-cv-00418, 2023 WL 6849034, at *2 (S.D. Tex. Oct. 17, 2023) (quotation omitted).

To adequately plead enterprise coverage, Plaintiffs must, in effect, make three distinct sets of allegations. First, Plaintiffs must plead that they were employed in an enterprise. *See* 29 U.S.C. § 207(a)(1). The FLSA defines an "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). Second, Plaintiffs must show that the enterprise is "engaged in commerce." 29 U.S.C. § 207(a)(1). To meet this requirement, "Plaintiffs need only plausibly allege that they handled goods or materials that had at some point travelled interstate." *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 787 (5th Cir. 2020); *see also* 29 U.S.C. § 203(s)(1)(A)(i) (including "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" within the enterprise definition). Third, employees seeking to invoke enterprise coverage must also allege that the

enterprise's "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii).

Turning to the specifics of the Amended Complaint, Plaintiffs state:

Defendants are in the janitorial, commercial and residential cleaning business. Their business is an enterprise for FLSA coverage purposes. Their employees handled a wide variety of materials and goods that have moved in interstate commerce including but not limited to janitorial equipment and cleaning supplies that were necessary for the performance of their employment duties.

Dkt. 10 at 2.

These allegations adequately allege the existence of an enterprise (element one), as they establish a common business purpose of providing commercial and residential cleaning services.

In determining whether Defendants are engaged in interstate commerce (element two), I may "infer from the [Plaintiffs'] allegations about the nature of [Defendants'] business . . . that the enterprise involved working with . . . supplies that moved in interstate commerce." *Embry v. 4745 Second Ave., Ltd.*, No. 4:19-cv-00305, 2019 WL 8376264, at *2 (S.D. Iowa Nov. 13, 2019). Plaintiffs contend that a vast array of janitorial equipment and cleaning supplies they utilized in performing their employment duties moved in interstate commerce, and Defendants do not dispute this. As a result, I find these connections to interstate commerce sufficient to meet the "engaged in commerce" prong. *See Martin v. E & T Cap. Res., LLC*, No. 1:15-cv-781, 2016 WL 11586187, at *2 (W.D. Tex. Mar. 31, 2016) (employees of car wash covered by FLSA because they handled goods—such as "shop vacs, air compressors, carpet extractors, polishers and buffers, sandpaper, window cleaner, and metal polishes"—that moved in interstate commerce); *Boekemeier v. Fourth Universalist Soc'y of N.Y.*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000) ("Plaintiff's handling of janitorial goods that have moved in commerce . . . [is] more than sufficient to invoke enterprise coverage.").

Third and finally, I must assess whether Plaintiffs have adequately alleged that Defendants conduct at least $500,000 in annual business. Plaintiffs allege

that "[u]pon information and belief, Defendants' annual gross revenues exceed $500,000.00" Dkt. 10 at 3. This is a bare bones allegation, but it satisfies the low standard required of Plaintiffs at this stage. As one federal judge explained:

> When a plaintiff alleges FLSA "enterprise" coverage, the specific information as to the dollar amount of business and the details of all employee activity will largely be unknown to the plaintiff, but known to the defendant. Moreover, because of the greatly expanded reach of the FLSA in 1961, most, if not all, businesses will likely fall under the FLSA if the amount of business exceeds a certain threshold. This threshold was enacted to exclude "Mom and Pop" operations from coverage. *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 694 (3d Cir. 1994). Therefore, the most salient element of an "enterprise" allegation will be the amount of business a defendant does. That information will most often be in the hands of the defendant. For this reason, an allegation of "enterprise" coverage need not attempt to set out a separate allegation of the defendant's sales or a description of the activities of other employees. In most cases, that would only involve gross speculation and not provide the defendant with meaningful information because the defendant already has knowledge of such information. Therefore, bare bones allegations are acceptable for "enterprise" coverage, and it is best that discovery proceed and the issues concerning gross sales and type of interstate activity be left for summary judgment or trial. Therefore, that part of defendants' motion to dismiss should be denied.

*Farrell v. Pike*, 342 F. Supp. 2d 433, 438–39 (M.D.N.C. 2004). Given the allegation that Defendants regularly perform janitorial work at a wide variety of residential and commercial buildings, it is certainly plausible that Defendants' annual gross revenues exceed $500,000. The actual revenues can be easily uncovered during the discovery process, and that evidence will be considered at the summary judgment stage.

In sum, Plaintiffs have adequately alleged enterprise coverage under the FLSA. Because of this finding, I need not address whether Plaintiffs have also alleged individual coverage.

## C.   THE EMPLOYER'S VIOLATION OF THE FLSA'S OVERTIME-WAGE REQUIREMENTS

Next, Plaintiffs must plausibly allege that Defendants "violated the FLSA's overtime-wage requirements." *White*, 996 F.3d at 309.

Plaintiffs allege that they "were not paid the appropriate and legally required overtime wages under the FLSA." Dkt. 10 at 3. "Rather, Defendants paid Plaintiffs a straight-time hourly rate for all hours worked in excess of forty (40) in a workweek instead of the legally required overtime rate under federal law." *Id.* at 4. This allegation is sufficient to survive a motion to dismiss. *See White*, 996 F.3d at 309 (finding allegation that plaintiff was "paid for her overtime at a rate less than one and one-half times the regular rate at which she was [] employed in violation of the FLSA" meets the standard for properly pleading an FLSA violation).

Defendants argue that the Amended Complaint is "entirely absent of any factual allegations concerning willful violation" of the FLSA.[3] Dkt. 11 at 6–7. I disagree. "Within the Fifth Circuit, district courts addressing the pleading requirements of willfulness under the FLSA have also split into two camps." *Cunningham v. Hamilton-Ryker IT Sols., LLC*, No. 3:21-cv-00302, 2022 WL 868709, at *2 (S.D. Tex. Feb. 16, 2022). One line of cases adopts the view that a general averment of willfulness at the pleading stage is enough. *See Frazier v. Dall./Fort Worth Int'l Airport Bd.*, No. 3:16-cv-2657, 2017 WL 2766087, at *3 (N.D. Tex. June 25, 2017) ("Conclusory allegations of willfulness may survive a 12(b)(6) motion to dismiss."). The other line of cases concludes that "mere allegations that an employer acted willfully without any additional information are

---

[3] Generally speaking, a plaintiff must file FLSA claims within two years after the cause of action accrues. *See* 29 U.S.C. § 255(a). However, a three-year statute of limitations applies under the FLSA when the employer's conduct is willful. *See id.* "An employer willfully violates the FLSA if it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

inadequate." *Kharb v. Ericsson, Inc.*, 4:17-cv-619, 2019 WL 1198399, at *4 (E.D. Tex. Mar. 14, 2019).

Although the Amended Complaint is not particularly detailed, Plaintiffs do allege that they "regularly worked substantial hours . . . in excess of forty (40) hours per week," Dkt. 10 at 3, and that Defendants "attempted to avoid their obligations and responsibilities [under the FLSA] by intentionally and falsely classifying Plaintiffs as independent contractors." *Id.* at 5. These allegations are sufficient at this stage of the litigation to support a willfulness claim under either standard. *See Cunningham*, 2022 WL 868709, at *3 (finding allegations that employer "was aware of the overtime requirements of the FLSA," but "nonetheless failed to pay certain hourly employees . . . overtime" sufficient to support a willfulness claim); *Heilman v. COSCO Shipping Logistics (N. Am.) Inc.*, No. H-19-1695, 2020 WL 1452887, at *2 (S.D. Tex. Jan. 22, 2020) (finding allegations that an employer "was aware that [the employee] was performing such compensable work" and the employer "failed and refused to compensate [the employee]" sufficient to survive a motion to dismiss).

## D.   THE AMOUNT OF OVERTIME-PAY DUE

Finally, Plaintiffs must plausibly allege "the amount of overtime-pay due." *White*, 996 F.3d at 309.

Plaintiffs allege that they "were employed by Defendants within the past 3 years from the date of the filing of" the Amended Complaint. Dkt. 10 at 3. Plaintiffs also allege that they "regularly worked substantial hours for Defendants well in excess of forty (40) hours per week. Plaintiffs generally averaged approximately forty-five (45) hours or more per week." *Id.*

"Those are all factual allegation[s]—not legal conclusions—and, if proven, they give rise to a plausible claim for relief." *Hoffman v. Cemex, Inc.*, No. H-09-3144, 2009 WL 4825224, at *3 (S.D. Tex. Dec. 8, 2009) (finding complaint sufficient where plaintiffs alleged that they were non-exempt, worked over 40 hours per workweek, and were not paid time-and-a-half for overtime hours).

"Detailed factual allegations are not required to meet Rule 8(a) in the specific context of FLSA overtime claims." *Rolfsmeier v. Cole Speech & Language Ctr., LP*, No. H-21-2625, 2021 WL 5417370, at *3 (S.D. Tex. Nov. 19, 2021) (cleaned up).

Defendants argue that Plaintiffs' allegations are insufficient to show "what amount was paid, and what amount may be due" to Plaintiffs. Dkt. 11 at 6. But "[s]uch proof is unnecessary at this point." *Molina-Aranda*, 983 F.3d at 788 (allegations that "for several pay periods during late August and September of 2015, [employees] worked 50 to 80 or more hours a week but were not paid fully or paid at all" sufficient to adequately state an FLSA overtime claim); *see also White*, 996 F.3d at 309 (allegations that from June 2018 to January 2019, the employee "'regularly' worked in excess of forty hours per week," and that she was "paid for her overtime at a rate less than one and one-half times the regular rate at which she was [] employed in violation of the FLSA" sufficient to satisfy Rule 12(b)(6)'s pleading requirements). "[T]he allegations [in the Amended Complaint] have put [Defendants] on notice, and, with this, [Defendants] can easily determine time periods on [their] own by looking at company records, which [they are] required to keep by law." *Hoffman*, 2009 WL 4825224, at *3 (quotation omitted). As such, Plaintiffs' underpayment of wages allegations propel them past the motion to dismiss stage.

## CONCLUSION

For the reasons identified above, I recommend that Defendants' First Amended Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 11) be **DENIED**.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 29th day of November 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE